United States District Court
Southern District of Texas
**ENTERED**
February 14, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JOE EDWARD NESMITH, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:16-CV-491 |
| | § | |
| ROBERT M. SPEER, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Joe Edward Nesmith, proceeding *pro se*, alleges that Defendant Mark T. Esper, in his official capacity as Acting Secretary of the Army, unlawfully discriminated against him in violation of Title VII, 42 U.S.C. § 2000 *et seq*., during his employment as an aircraft mechanic at the Corpus Christi Army Depot ("CCAD").  (D.E. 76).  This case was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636.  On August 2, 2018, Defendant filed the pending Motion to Dismiss.  (D.E. 82).  On November 27, 2018, Defendant filed the pending Motion for Summary Judgment.  (D.E. 95).  Plaintiff's combined response to both motions was filed on December 19, 2018.  (D.E. 96).  Defendant filed a reply on February 1, 2019.[1]  (D.E. 101).  For the reasons stated below, the undersigned respectfully recommends Defendant's Motion to Dismiss

---

[1]On December 27, 2018, Defendant's Motion to Stay Filing a Reply Brief was granted.  (D.E. 98).  Specifically, Defendant was given five days after his return to work from the government shutdown to file a reply.  Therefore, Defendant's reply is timely filed.

be **DENIED**, Defendant's Motion for Summary Judgment be **GRANTED** and this case

be **DISMISSED**.

## I.    PROCEDURAL HISTORY

Plaintiff, proceeding *pro se* and *in forma pauperis*, filed this action in November

of 2016.  (D.E. 1).  Plaintiff alleged Defendant discriminated against him based on his

disability, retaliated against him for exercising his Equal Employment Opportunity

("EEO") rights and subsequently unlawfully terminated his employment.  While this case

originally derived from two separate EEO complaints, the only remaining allegations

stem from EEO complaint, Case No. ARCCAD14FEB00389 ("First EEO Complaint"),

where Plaintiff raises claims of disability discrimination, retaliation for engaging in

protected activity during the time prior to his termination, and a hostile working

environment.  (D.E. 96-3; D.E. 96-4; D.E. 96-5 and D.E. 96-6).  Plaintiff's claim for

wrongful termination has previously been dismissed by this Court.[2]  On October 19,

2017, the undersigned entered an M & R recommending Defendant's Motion for

---

[2]Over the course of several years, Plaintiff filed several EEO complaints.  On February 24, 2017, the undersigned held an initial conference at which Plaintiff, proceeding *pro se*, indicated he was challenging only the activities raised in the First EEO complaint. (D.E. 17, Pages 2- 3). However, as discussed in the April 14, 2017 Memorandum and Recommendation ("M & R"), at the same hearing, Plaintiff cited to documents and raised arguments related to a different EEO complaint he later filed and appealed to the Merits Systems Protection Board ("MSPB"), Case No. DA-0752-16-0048-I-1 ("Second EEO Complaint"), which included Plaintiff's argument that he was unlawfully terminated.  (D.E. 17, Pages 2-3 and D.E. 42, Page 2, Footnote 3).  However, any grounds for relief based on Plaintiff's Second EEO Complaint, including Plaintiff's termination, were dismissed from this action because Plaintiff failed to timely exhaust his administrative remedies.  (D.E. 17, Pages 12-14 and D.E. 21).  Plaintiff's later appointed counsel requested, and was given leave on January 17, 2018, to file a motion for reconsideration of this dismissal but did not do so.  (Minute Entry 1/17/18).  In his response to the pending dispositive motions, Plaintiff states he is not pursuing a wrongful termination claim.  (D.E. 96, Page 2, Footnote 2).

Summary Judgment be granted.  (D.E. 42).  On November 13, 2017, Senior United States District Judge Hayden Head appointed counsel to Plaintiff.  (D.E. 47).  On January 27, 2018, Judge Head held a status conference, permitting Plaintiff's counsel to take Plaintiff's supervisors' depositions, totaling nine hours.  (Minute Entry 1/17/2018).  On April 26, 2018, Judge Head held another status conference where he extended this time to eighteen hours, denied Defendant's Motion for Summary Judgment without prejudice, and ordered the parties to file a joint case management plan and amended disclosures on or before May 7, 2018.  (Minute Entry 4/26/18 and D.E. 61).

On May 2, 2018, this case was reassigned to United States District Judge Nelva Gonzales Ramos.  (D.E. 62).  A hearing was held on June 4, 2018 before the undersigned. The parties represented the only remaining claim was related to Plaintiff's retaliation and hostile work environment claims.  (D.E. 67).  Plaintiff was ordered to file an amended complaint on or before June 22, 2018, limited to these grounds and not raising any new or additional claims or claims previously dismissed or resolved in this action.  (D.E. 67). On June 22, 2018, Plaintiff filed an amended complaint asserting claims for retaliation and disability discrimination, which was subsequently amended on July 13, 2018 when Plaintiff filed a second amended complaint.  (D.E. 69 and D.E. 76).  Just under two weeks later, on July 24, 2018, the undersigned held another status conference and entered a Second Amended Scheduling Order.  (D.E. 79).  At the status conference, Plaintiff was ordered to complete depositions on or before September 28, 2018.

On August 2, 2018, Defendant filed the pending Motion to Dismiss.  (D.E. 82). The parties then jointly requested, and were given, an extension of the previous deadlines

and a Third Amended Scheduling Order was entered on August 27, 2018, permitting Plaintiff to take the depositions on or before November 15, 2018 and setting the dispositive motion deadline shortly thereafter.  (D.E. 85).  On November 5, 2018, the parties again jointly requested a deadline extension, which was denied by the undersigned the next day and again upon reconsideration.  (D.E. 88; D.E. 89; D.E. 92 and Minute Entry 11/8/18).  On November 27, 2018, Defendant filed the pending Motion for Summary Judgment to which Plaintiff filed a response on December 19, 2018.  (D.E. 95 and D.E. 96).  Defendant's reply was filed on February 1, 2019.  (D.E. 101).

## II.    BACKGROUND[3]

Plaintiff was employed at CCAD as an aircraft mechanic for over a decade until he was terminated on June 20, 2014 for an alleged pattern of continuous rude and discourteous conduct toward a supervisor.  (D.E. 10-11, Pages 2-5 and D.E. 76, Page 8).  Prior to his termination, after he was injured on the job, Plaintiff filed several Equal

---

[3]The undersigned has considered the entire admissible record in this case, including the previous filings of both Plaintiff and Defendant.  *See* Fed. R. Civ. P. 56 (c)(3) ("*Materials Not Cited*.  The court need consider only the cited materials [filed with a motion for summary judgment or response], but it may consider other materials in the record.")  As the record demonstrates, the undersigned has previously recommended Plaintiff's case be dismissed in its entirety.  (D.E. 42).  The parties' new filings and the evidence presented therein has been fully considered.  However, as the arguments and law are relatively the same, this M & R follows the undersigned's October 19, 2017 M & R in both form and substance.

Additionally, Plaintiff seeks to strike 13 of Defendant's 32 exhibits.  (D.E. 96, Pages 2 and 10-11).  Plaintiff's Motion to Strike Defendant's exhibits is **DENIED**.  First, "[a]t the summary judgment stage, materials cited to support or dispute a fact need only be *capable* of being 'presented in a form that would be admissible in evidence.'" *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (citing Fed. R. Civ. P. 56(c)(2) (emphasis in original).  Second, Defendant has now submitted declarations and court reporter's signature pages thereby remedying any alleged defects.  (D.E. 101).  Lastly, regularly maintained business records are an exception to the hearsay rule.  Fed. R. Evid. 803(6).

Employment Opportunity ("EEO") complaints alleging he was being unlawfully harassed by his direct supervisor, Jose Mondragon.[4]  Specifically, Plaintiff alleges Mr. Mondragon retaliated against him for exercising his EEO rights, created a hostile working environment, and discriminated against him based on a disability.  The timeline of relevant events is detailed below.

After Plaintiff sustained a work-related injury to his left shoulder and elbow/forearm as well as his neck in February 2012, he was placed on a light duty assignments.  (D.E. 96, Page 4).  Approximately two months later, in April 2012, Plaintiff was suspended for four days for loafing, delay in carrying out instructions, rude and discourteous conduct directed at a supervisor, absence without approved leave ("AWOL"), and leaving the worksite without permission.  (D.E. 95-9).[5]

On September 11, 2012, Plaintiff filed a formal complaint of discrimination alleging Mr. Mondragon discriminated against him because of a disability.  (D.E. 95-1, Pages 1 and 4 and D.E. 95-2, Page 4).[6]  On November 19, 2012, Plaintiff was suspended

---

[4]At all times relevant to this action, Mr. Mondragon was Plaintiff's first level supervisor, Elsa Marines was Plaintiff's second level supervisor and Roy Hollins was Plaintiff's third level supervisor. (D.E. 76, Page 2 and D.E. 96, Page 4).

[5]Plaintiff's second level supervisor, Ms. Marines, found Plaintiff (1) failed to perform tasks assigned by his work leader, Mr. Piranski, without a justifiable reason; (2) acted unprofessionally during a conversation with Mr. Mondragon, raising his voice and arguing with him about a sick leave request; (3) failed to submit an appropriate doctor's excuse in accordance with previously established policy after requesting four hours sick leave; (4) and failed to follow appropriate leave requesting procedure after failing to report back to work until 12:40 p.m. after a safety committee meeting and subsequent question period ended at 10:00 a.m.  (D.E. 95-9).

[6]Plaintiff's current federal action is based on a subsequent EEO complaint filed in 2014, as detailed later in this Memorandum & Recommendation.

for 14 days beginning November 20, 2012 for loafing, rude and discourteous conduct directed at a supervisor and for failure to follow instructions. (D.E. 95-10).[7]  Before and after Plaintiff's two suspensions, Mr. Mondragon completed several Memoranda for the Record ("MFRs") documenting his complaints about Plaintiff's behavior in 2012 and 2013.  In the majority of these MFRs, Mr. Mondragon alleges Plaintiff was disrespectful, argumentative and/or rude to him. (D.E. 95-11).  At issue in this case are three MFRs issued the following year between February 5 and March 24, 2014. (D.E. 95-27; D.E. 96-4; D.E. 96-5; and D.E. 96-8 to D.E. 96-11).

On February 3, 2014, Plaintiff requested Mr. Mondragon schedule an appointment for him with the CCAD EEO office and an appointment was scheduled for February 11, 2014. (D.E. 96-7).  Two days later, during the morning of February 5, 2014, Plaintiff, who was a vice president of the local government employee union branch, emailed Mr. Mondragon around 8:45 a.m. requesting official time to work on a union matter beginning at 10:00 a.m. (D.E. 95-11).[8]  Mr. Mondragon alleged he called the union chief

---

[7]Roy A. Hollins, Director of Aircraft Production, found Plaintiff was given instructions and assignments to work on within his limitations but Plaintiff took an excessive amount of time to complete tasks, did not complete assignments in a timely manner, and reported a significant number of labor hours toward work that was not done. (D.E. 95-10, Page 2).  Mr. Hollins also found Plaintiff did not have any witnesses to support his allegation that Mr. Mondragon frequently yelled at him and Plaintiff's listed witness reported that he had not seen Mr. Mondragon yell at the Plaintiff at any time.  In determining mitigating factors when considering the level of punishment, Mr. Hollins considered Plaintiff's length of government service, fully successful appraisal ratings and stated he "believe[d] that [Plaintiff's] own physical limitations and the health concerns of your family members have caused you significant stress and this also leads me to mitigate the proposed removal remedy." (D.E. 95-10, Page 3).

[8]Pursuant to the labor management agreement between CCAD and the American Federation of Government Employees AFL-CIO Local 2142, Plaintiff was permitted to use a limited amount of official time to work on union matters after requesting and receiving permission from his

steward who requested Plaintiff be immediately sent to the union office to discuss what union work Plaintiff was requesting official time to work on, as no union work was assigned to him at that time.  (D.E. 95-11, Page 1 and D.E. 95-3, Pages 28-30).   At approximately 8:50 a.m., Mr. Mondragon alleged he gave Plaintiff verbal permission to immediately go to the union, but Plaintiff ignored him and continued to talk to his work leader, Douglas Brown, for several minutes.  (D.E. 95-11, Page 1; D.E. 96-14, Pages 1-2; and D.E. 95-3, Pages 27-30).   Plaintiff testified he did not immediately leave because he did not want to be rude to Mr. Brown by leaving in the middle of a conversation.  (D.E. 95-3, Page 28).   Mr. Mondragon further reported that after he again instructed Plaintiff to go to the union office, Plaintiff, while walking away from him, said "in a loud voice" that "if he wanted to go [to the union office] he would go when he wants, but he doesn't have to go now."  (D.E. 95-11, Page 1; D.E. 95-15 and D.E. 95-3, Pages 27-30).   Plaintiff testified that he said "Well, I'm not going to—I'm not going to the union right now.  It's break time."  (D.E. 95-3, Pages 27-30).   Plaintiff then signed out to go to the union at 8:50 a.m. and then locked up his tools but did not arrive at the union office until approximately 45 minutes later at 9:35 a.m.  (D.E. 95-17; D.E. 96-14, Pages 1-2; and D.E. 95-3, Pages 29-30).   Plaintiff testified he took a break from 9:00 until 9:15 a.m. and took his medication during this time.  (D.E. 95-3, Pages 27-28).

On February 10, 2014, Mr. Mondragon created an MFR describing the events of February 5, 2014 in addition to outlining previous interactions with the Plaintiff where he

---

supervisor and tracking official time used.  (D.E. 95-14, Pages 3-4 (Section 2) and Pages 7-9 (Section 5)).

alleged Plaintiff was rude and discourteous to him, all of which Plaintiff indicated were not true. (D.E. 95-18).  On the same day, Plaintiff met with his second level supervisor, Ms. Marines, and Plaintiff's union representative to discuss the February 5, 2014 incident and Plaintiff continued to state the allegations were untrue.  (D.E. 96-14, Page 2).

On February 11, 2014, Plaintiff had an initial meeting with his agency's EEO counselor.  (D.E. 95-26, Page 4).  On February 24, 2014, Mr. Mondragon issued another MFR to Plaintiff for working on his work computer at 6:45 a.m. before his normal duty hours, which started at 7:00 a.m.  (D.E. 95-20).  It is undisputed that Plaintiff had previously been informed that CCAD employees were not permitted to work without compensation and could not be compensated for work outside their scheduled hours without prior approval.  (D.E. 95-20 and D.E. 95-3, Pages 32-33).  However, Plaintiff was allowed to use his work computer to conduct union business before, during, or after work hours.  (D.E. 95-3, Pages 32-23).  Further, Plaintiff testified he did not request overtime for the time he spent on the computer that morning as he was checking his personal e-mail.  (D.E. 95-3, Pages 32).  Also on February 24, 2014, Mr. Mondragon created another MFR alleging Plaintiff failed to follow the chain of command after Plaintiff sent an email to the CCAD Management Employee Relations Specialist alleging Mr. Mondragon refused union representation to sheet metal mechanics without first bringing the issue to Mr. Mondragon's attention before sending the email.  (D.E. 95-21).

On February 27, 2014, Plaintiff filed an informal grievance with his union requesting both February 24, 2014 MFRs be removed from Mr. Mondragon's files.  (D.E. 95-23).  It appears Plaintiff received this requested relief as correspondence and later

agency findings indicate the two February 24, 2014 MFRs were removed.  (D.E. 96-5, Page 2).

On March 10, 2014, a Duty Status Report was completed, noting Plaintiff's work-related injury from 2012 remained, and Plaintiff was restricted to no climbing, bending/stooping, pulling/pushing, simple grasping, or reaching above his shoulder, and lifting no more than 18 pounds continuously or intermittently.  (D.E. 95-7).  As a result, Plaintiff remained on light duty assignments.   On March 20, 2014, Mr. Mondragon reissued an amended MFR regarding Plaintiff being rude, disrespectful and insubordinate on February 5, 2014.  (D.E. 95-19).  Plaintiff again indicated the allegations were not true.  (D.E. 95-19, Page 2).

On March 31, 2014, Plaintiff filed a formal complaint of discrimination with his agency's EEO office alleging Mr. Mondragon was discriminating against him in retaliation for his prior protected EEO activity, for his disability, and was creating a hostile work environment.  (D.E. 95-1).  Specifically, Plaintiff alleged that after he filed the September 11, 2012 EEO complaint against Mr. Mondragon for disability discrimination, he was continuously bulled, belittled and humiliated in front of his co-workers by Mr. Mondragon.  (D.E. 95-1, Page 4).  Plaintiff also alleged the three MFRs issued between February 4 and March 20, 2014 were reprisals for his requesting at appointment on February 3, 2014 with an EEO counselor.  (D.E. 95-1, Page 4).  Upon initial review by Plaintiff's agency, it was found Plaintiff had not stated a claim for discrimination or harassment and his agency's EEO manager dismissed this complaint for failure to state a claim.  (D.E. 96-5).  In doing so, the agency EEO manager found the

three complained of MFRs were "not disciplinary in nature, d[id] not go into [Plaintiff's] official personnel file, and d[id] not affect a term or condition of employment." (D.E. 14, Page 24). The agency EEO manager further found that two of the three MFRs were removed from Mr. Mondragon's file at Plaintiff's request in the informal grievance procedure and Mr. Mondragon's actions did not amount to harassment. (D.E. 96-5, Page 2).

Plaintiff appealed the agency's decision[9] and on November 28, 2014, the EEOC Office of Federal Operations remanded the case after determining the MFRs, even if not made part of Plaintiff's personnel file, "would reasonably be likely to deter a person from engaging in protected activity, especially in light of the frequency described." (D.E. 95-27, Page 2).[10] The case was still pending at the dispositive motion stage before an EEOC Administrative Judge when Plaintiff filed this suit on November 3, 2016. (D.E. 95, Page 12; D.E. 95-28; and D.E. 96, Page 3).

## III.   SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A

---

[9]Plaintiff's employment was terminated on June 20, 2014, for rude and discourteous conduct directed toward a supervisor. (D.E. 10-11, Pages 2-5; D.E. 76, Page 8). The Notice of Proposed Removal, dated April 10, 2014 and signed by Ms. Marines, includes the February 5, 2014 incident. (D.E. 96-14 and D.E. 96-15).

[10]Before this case was remanded on November 28, 2014, Plaintiff filed a second formal EEO complaint on August 18, 2014, challenging his June 20, 2014 termination. (D.E. 10-4, Pages 1-7). However, the proceedings in that EEO case regarding his termination are no longer relevant to this action because Plaintiff failed to timely exhaust his administrative remedies. (D.E. 17, Pages 12-15). As a result, any claims related to Plaintiff's termination were dismissed from this action on May 17, 2017. (D.E. 21).

genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits, and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002).

The Court may not weigh the evidence, or evaluate the credibility of witnesses. *Id.* Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e); *see also Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992)(refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987)(stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact. "[T]he

substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.  If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248.  The nonmovant may not rely merely on allegations, denials in a pleading or unsubstantiated assertions that a fact issue exists, but must set forth specific facts showing the existence of a genuine issue of material fact concerning every element of its cause(s) of action. *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998).  "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451.

IV.   **ANALYSIS**

A.   **RETALIATION**

Plaintiff alleges the three MFRs issued by Mr. Mondragon constitute retaliation for engaging in protected EEO activity.  (D.E. 76, Pages 8-9).  Title VII prohibits retaliation against employees who engage in protected conduct, such as filing a charge of harassment or discrimination.  *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 325 (5th Cir. 2002).

To assert a claim of retaliation under Title VII, a plaintiff with only circumstantial evidence, as is the case here, must satisfy the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973); *see also Peace v. Harvey*, 207 F. App'x 366, 368 (5th Cir. 2006).   Therefore, to successfully bring a retaliation claim under Title VII, Plaintiff must establish a *prima facie* case of retaliation by showing: (1) he participated in a protected activity; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the materially adverse action.  *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007).   If a plaintiff establishes a *prima facie* case of retaliation, the burden then shifts to the defendant to articulate a legitimate, nonretaliatory reason for its employment action.  *Id.* at 557.  If the defendant is successful in meeting this burden, the inference of discrimination disappears and the plaintiff must present evidence that each of the employer's proffered reasons are mere pretext.  *Id.*

The parties do not dispute that Plaintiff's EEO activity satisfies the protected activity prong. (D.E. 95, Pages 17-21 and D.E. 96, Page 12).  However, Defendant asserts Plaintiff fails to establish the second prong because he was not subject to any adverse employment action and, even if he was, that Plaintiff cannot rebut the Defendant's legitimate, nonretalitory reason for its actions.  (D.E. 95, Pages 17-21).  The Supreme Court clarified that "materially adverse actions" for the purposes of retaliation claims are "not limited to discriminatory actions that affect the terms and conditions of employment," but also include those that "well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  *Burlington N. & Santa*

*Fe. Ry. Co. v. White*, 548 U.S. 53, 64-68 (2006) (citations omitted).  The Supreme Court further stressed:

> We speak of *material* adversity because we believe it is important to separate significant from trivial harms.  Title VII, we have said, does not set forth 'a general civility code for the American workplace.'  An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience.  The antiretaliation provision seeks to prevent employer interference with 'unfettered access' to Title VII's remedial mechanisms.  It does so by prohibiting employer actions that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers.  And normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence.

548 U.S. at 68 (citations omitted).  Additionally, the Fifth Circuit has held that "written warnings and unfavorable performance reviews are not adverse employment actions where colorable grounds exist for disciplinary action or where the employee continues to engage in protected activity."  *Jackson v. Honeywell Intern., Inc.*, 601 F. App'x 280, 286 (5th Cir. 2015) (citations omitted).

For both reasons, the undersigned recommends the MFRs at issue are not adverse employment actions.   Uncontroverted summary judgment evidence demonstrates colorable grounds for Plaintiff receiving the MFRs.  While Plaintiff argues his conduct was not improper, he does not dispute that the incidents on which the MFRs are based occurred.  Further, prior to receiving the MFRs at issue in 2014, Plaintiff was twice suspended for similar behavior as early as 2012.  (D.E. 95-9 and D.E. 95-10).  Also, after receiving these MFRs in February and March 2014, Plaintiff continued to engage in

protected activity, including filing a formal complaint of discrimination the same month, on March 30, 2014, as well as several later EEO complaints.  (D.E. 95-1).

Even if Plaintiff had established a *prima facie* case of retaliation, Plaintiff has failed to respond to Defendant's alleged non-retaliatory reasons by producing evidence that would permit a reasonable jury to find that he would not have received the MFRs "but for" his protected activity.  *See Vargas v. McHugh*, 630 F. App'x 213, 218 (5th Cir. 2015).  "In order to avoid summary judgment, the plaintiff must show 'a conflict in substantial evidence' on the question of whether the employer would not have taken the action 'but for' the protected activity."  *Id*.  (citations omitted).  "In particular, 'the plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer."  *Id*. (citing *McCoy*, 492 F.3d at 557).

Defendant has satisfied its burden by providing Plaintiff's record of written performance violations, including at least one written warning cautioning Plaintiff about possible termination.  As detailed above, Plaintiff had twice been suspended in 2012 for behavior similar to that described in the 2014 MFRs at issue.  Further, for a period of several years, Mr. Mondragon had repeatedly issued MFRs to Plaintiff about what he regarded to be discourteous behavior.

To the extent Plaintiff asserts the MFRs issued shortly after he requested an EEO appointment shows pretext, the MFRs are substantiated by other evidence in the summary judgment record and Plaintiff has failed to provide any evidence that challenges the accuracy of the MFRs.  Plaintiff does not dispute that each incident that is the subject of each of the three challenged MFRs occurred.  "Merely disagreeing with an employer's

negative performance assessment is insufficient to show pretext." *See Perez*, 307 F.3d at 325.  In short, Plaintiff has failed to put forth any competent summary judgment evidence that establishes Mr. Mondragon would not have written the MFRs "but for" Plaintiff requesting an EEO appointment.  Plaintiff's subjective belief that retaliation motivated Defendant's actions, as asserted in his declaration, is insufficient to create a fact issue here.  *See Malouse v. Winter*, 338 F. App'x 356, 359 (5th Cir. 2009) ("Plaintiff's subjective belief of discriminatory intent or retaliatory motive is insufficient to raise a genuine issue of material fact.") (citation omitted); (D.E. 96-2).

### B.    REMAINING ALLEGATIONS

In his Second Amended Complaint, Plaintiff asserts a claim for disability discrimination.  (D.E. 76, Pages 9-12).  Additionally, Plaintiff arguably asserts a claim for hostile work environment, although the Second Amended Complaint does not include a section specifically labeled as such.  However, it is clear he is alleging he was subjected to an abusive working environment.  (D.E. 76, Page 9).  In both the pending Motion to Dismiss and Motion for Summary Judgment, Defendant seeks dismissal of these grounds for relief, asserting Plaintiff has not proffered evidence to show (1) the alleged harassment was sufficiently severe or pervasive and (2) he suffered from a disability or that he requested reasonable accommodation.  (D.E. 82 and D.E. 95, Pages 21-26).

Plaintiff's response does not address Defendant's argument that dismissal is appropriate with respect to these two claims.  (D.E. 96).  It is Plaintiff's burden to specifically identify evidence in the record to support his claims and the Court does not have a duty "to sift through the record to find evidence that supports [his] opposition to

[Defendant's] motion for summary judgment." *Esquivel v. McCarthy*, No. 3:15-cv-1326-L, 2016 WL 6093327, at * 2 (N.D. Tex. Oct. 18, 2016) ("The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim.") (citations omitted). While this does not allow the Court to enter a "default" summary judgment, the Court is "permitted to accept the [Defendant's] facts as undisputed when no response or opposition is filed." *Id*. (citation omitted).   For this reason, the undersigned has considered the merits of this claims.[11]

### 1.   HOSTILE WORK ENVIRONMENT

Plaintiff, under the heading disability discrimination, asserts he was subjected to an abusive working environment.  (D.E. 76, Page 8).  Defendant contends Plaintiff has not proffered evidence to show the alleged harassment was sufficiently severe or pervasive.  The undersigned agrees.  Discriminatory verbal intimidation, ridicule, and insults may be sufficiently severe or pervasive to alter the conditions of the victim's employment and create and abusive working environment that violates Title VII. *Jackson*, 601 F. App'x at 287.  In deciding if a valid hostile work environment claim exists, the court should consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (citation omitted).

---

[11]The undersigned recommends the Court base this decision on Defendant's Motion for Summary Judgment rather than it's Motion to Dismiss as Plaintiff arguably raised these grounds for relief in the First EEO Complaint.

To be actionable, the work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Id.* (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (citation omitted)).

Plaintiff has failed to make any factual allegations showing that he was subjected to a hostile work environment because of his EEO activity, much less any allegations to show the severe and pervasive harassment necessary to support a hostile work environment claim.  As discussed above, the MFRs were issued to Plaintiff based on conduct his supervisor, Mr. Mondragon, found to be objectionable.  These MFRs were then reviewed and found to have merit by those supervisors above Mr. Mondragon, including Plaintiff's second level supervisor, Ms. Marines.  Further, to the extent Plaintiff argues Mr. Mondragon was "rude and discourteous to everybody," the Supreme Court has warned that "Title VII does not become a 'general civility code' and when properly applied, [the standards for judging hostility are sufficiently demanding] to filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language.'"  *Faragher*, 524 U.S. at 788 (citations omitted); (D.E. 95-3, Page 33).  Plaintiff has not put forward or identified any evidence that Mr. Mondragon made comments sufficiently frequent, severe, or pervasive as to affect a term, condition or privilege of his employment.  Therefore, the undersigned recommends Plaintiff has failed to establish a hostile work environment claim.

2.    **DISABILITY DISCRIMINATION**

Lastly, the undersigned considers Plaintiff's claim of disability discrimination. The Rehabilitation Act[12] prohibits discrimination by federal agencies against otherwise qualified individuals with disabilities, and incorporates the standards of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq*., for determining when such discrimination occurs.  *See* 29 U.S.C. §§ 794(a),(d); *Bennett-Nelson v. Louisiana Bd. of Regents*, 431 F.3d 448, 454-55 (5th Cir. 2005).  The ADA in turn incorporates the burden-shifting framework set forth in *McDonnell Douglas* when there is no direct evidence of discrimination, as here. *See, e.g. Raytheon Co. v. Hernandez*, 540 U.S. 44, 49 (2003).   Therefore, a plaintiff must first establish a *prima facie* case of disability discrimination showing (1) that he is disabled or regarded as disabled; (2) otherwise qualified for the job in question and (3) his employer made an adverse employment decision because of his disability.  *Hamilton v. Sw. Bell Tel. Co.,* 136 F.3d 1047, 1050 (5th Cir. 1998).  Plaintiff has not met this burden.

 In his original complaint, which is a pre-printed form for suits under Title VII, he added to the list of categories of discrimination the category "disability."  (D.E. 1, Page 2).[13]  He does not state the nature of his disability or its imposed limitations.  In his

---

[12]The ADA specifically exempts the federal government as an employer from its coverage.  42 U.S.C. § 12111(5)(B)(i).  Instead, the Rehabilitation Act "constitutes the exclusive remedy for a federal employee alleging disability-based discrimination."  *Dark v. Potter*, 293 F. App'x 254, 258 (5th Cir. 2008) (citation omitted).

[13]Disability is not protected under Title VII.  *See* 42 U.S.C. § 2000e-2(a)(1).  Therefore, the undersigned has considered Plaintiff's claims under the Rehabilitation Act, where disability is protected.  *See* 29 U.S.C. § 794(a).

Second Amended Complaint, Plaintiff alleged his 2012 work injury caused "serious injuries to his neck, left shoulder, left forearm, and left elbow" which result in him being placed on a light duty assignment and substantially limited his major life activating including sitting, standing, climbing and lifting.  (D.E. 76, Pages 2-3).  Plaintiff further alleges he was not offered reasonable accommodation despite this injuries and work limitations.  (D.E. 76, Page 3).

However, it is clear from his Response to the pending Motion, and from the attached medical records, that Plaintiff asserts his alleged disability stems from the physical limitations and resulting light duty restrictions related to his work injury in 2012.  (D.E. 39).[14]  Further, it appears his claim of disability discrimination arises from Mr. Mondragon's assignment of work duties which Plaintiff asserts was above these limitations.  (D.E. 39 and D.E. 95-3, Page 45).

Therefore, as a threshold inquiry, the undersigned must determine if Plaintiff has submitted any competent summary judgment evidence that, during the time in question, he was an individual with a protected disability.  The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities." 42 U.S.C. § 12102(2) (emphasis added).  Disability is determined on a case-by-case basis. *See Albertson's, Inc. v. Kirkingburg,* 527 U.S. 555, 566 (1999). "Whether

---

[14]The EEO complaint at issue contains a check the box format.  (D.E. 95-1).  There are two options for disability:  mental or physical.  (D.E. 95-1, Page 1).  Plaintiff checked the mental disability box and left the physical disability box blank.  Further, Plaintiff fails to plead any mental limitations in the pending case.  However, as Plaintiff was proceeding *pro se* when he filed the First EEO complaint, the undersigned has considered Plaintiff's physical impairments regarding his claim of disability discrimination.

an impairment is substantially limiting is determined in light of (1) the nature and severity of the impairment, (2) its duration or expected duration, and (3) its permanent or expected permanent or long-term impact." *Hamilton*, 136 F.3d at 1050; *see also Talk v. Delta Airlines, Inc.,* 165 F.3d 1021, 1024 (5th Cir. 1999) (citing 29 C.F.R. § 1630.2(j)). In order to establish a *prima facie* case of disability discrimination and survive summary judgment, "a plaintiff must prove a substantial limit with specific evidence that *his particular* impairment substantially limits *his particular* major life activity." *Waldrip v. Gen. Elec. Co,* 325 F.3d 652, 656 (5th Cir. 2003) (describing standard for establishing disability as "exacting") (emphasis in original).   In other words, there are no per se disabilities under the ADA.   *Id.* "Major life activities means functions such as caring for oneself, performing manual tasks, walking, seeking, hearing, breathing, learning and working." *Hamilton*, 136 F.3d at 1050 (citing 29 C.F.R. § 1630.2(i)).   Lifting, reaching, sitting and standing can also be considered major life activities.   *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007) (citation omitted).

Defendant asserts Plaintiff may have had limitations but did not suffer from an actual or perceived disability.   (D.E. 95, Pages 23-24).   Although the question is close, medical records and dispensary permits issued by CCAD indicate Plaintiff was limited in several major life activities, including lifting, on a permanent basis.   (D.E. 39, Pages 4, 6, 8, 9, 13-14 and 17).   Therefore, the undersigned recommends the Court find there is, at a minimum, a question of fact as to whether Plaintiff suffered from a protected disability.

However, Plaintiff has failed to establish he was otherwise qualified for the job in question or that his employer made an adverse employment decision because of his

disability.  If an employee is disabled and can no longer perform the core functions of his position, the ADA requires employers to make a good faith effort to accommodate the employee.  *Handy v. Brownlee*, 118 F. App'x 850, 854 (5th Cir. 2004).  If an employer fails to do so, the employer violates the ADA.  *Loulseged v. Akzo Nobel, Inc.*, 178 F.3d 731, 736 (5th Cir. 1999).  However, an employer is not required to promote a disabled employee, reassign the employee to an already occupied position, to create a new position to accommodate the disabled worker or to create a new light duty position for a disabled employee.  *Cavada v. McHugh*, No. 2:12-cv-362, 2014 WL 12521696, at *3 (S.D. Tex. May 6, 2014) (citations omitted).  The plaintiff bears the burden of proving that an available position exists that he was qualified for and could, with reasonable accommodation, perform.  *Id*.  (citation omitted); *see also Wade v. Brennan*, 647 F. App'x 412, 415 (5th Cir. 2016) (employer not required to exempt employee from performance of essential function of the job, to find or create a new job for employee or to disadvantage other employees as a result of reassignment).

Plaintiff does not dispute that he is unable to perform the essential functions of his official position as a journeyman aviation mechanic.  (D.E. 95-3, Pages 34-36).  Instead, Plaintiff argues he was not reasonably accommodated by being given a permanent light duty position at CCAD.  (D.E. 76, Pages 3 and 9).  However, there is evidence establishing Plaintiff never properly sought this reasonable accommodation.  (D.E. 95-3, Pages 34 and D.E. 95-6).  Nevertheless, Plaintiff was placed in a temporary light duty position from the time of his injury in 2012 until he was terminated in 2014.  Further, Plaintiff has failed to show that a permanent light duty position existed and was available

at CCAD for which he was qualified.  *See Wade*, 647 F. App'x at 415 ("For the accommodation of a reassignment to be reasonable, it is clear that a position must first exist and be vacant.") (citation omitted).   Defendant has submitted competent summary judgment evidence that there are no permanent light duty positions at CCAD, only temporary ones meant to accommodate CCAD employees who suffer job-related injuries, occupational illnesses or diseases.  (D.E. 95-8).  Plaintiff fails to cite to any sufficient evidence to the contrary.   In his response to Defendant's first motion for summary judgment, Plaintiff cited to a reasonable accommodation request made on his behalf on June 7, 2012, which states he was requesting "permanent light duty, no work on aircraft" because he was "unable to perform essential functions of his assigned jobs" and his referral for reassignment on June 15, 2012.  (D.E. 39, Page 11).  He further cited to a medical treatment record dated June 4, 2012, where he was placed on permanent limitations.  (D.E 39, Pages 13-14).  However, the fact that Plaintiff requested and/or needed a permanent light duty position does not demonstrate the availability of such a position at CCAD and does not controvert Defendant's evidence that none are available. (D.E. 95-8).  Plaintiff does not dispute that he was not able to perform the essential functions of his official position as a journeyman aviation mechanic and CCAD is not required to create a permanent light duty position to accommodate Plaintiff.  *Cavada*, 2014 WL 12521696, at *3.  Therefore, Plaintiff has failed to establish he is otherwise qualified for the job in question.

Further, even if Plaintiff had established the first and second elements, he has failed to present any evidence demonstrating he was discriminated against solely because

of his alleged disability, other than his own conclusory assertions.   "An employee's subjective belief of discrimination alone is not sufficient to warrant judicial relief." *Bauer v. Albermarle Corp.*, 169 F.3d 962, 967 (5th Cir. 1999) (citation omitted). Plaintiff was placed on light duty restrictions from the time of his injury in 2012 and remained in a light duty position from 2012 until he was terminated in 2014.   While Plaintiff alleges Mr. Mondragon assigned him duties outside the scope of his limitations, he provides no evidence as to when or how.   Further, as indicated earlier, Plaintiff was terminated because of continuous misconduct for being rude and discourteous to a supervisor and Plaintiff has produced no evidence that it was related in any way to his disability.   (D.E. 10-11, Pages 2-5 and D.E. 96-14).   Therefore, the undersigned recommends Defendant's Motion be granted as to Plaintiff's claim for disability discrimination.

## V.     RECOMMENDATION

For the reasons stated above, the undersigned respectfully recommends Defendant's Motion to Dismiss be **DENIED**, Defendant's Motion for Summary Judgment be **GRANTED** and this case be **DISMISSED**.

Respectfully submitted this 13th day of February, 2019.

Jason B. Libby
United States Magistrate Judge

<u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(c); Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a Magistrate Judge's report and recommendation within **FOURTEEN (14) DAYS** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).